UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
WILLIAM MURAWSKI,

                Plaintiff,         17 Civ. 6859 (RWS)

  -against-                         OPINION

NEW YORK STATE BOARD OF ELECTIONS,
NEW YORK CITY BOARD OF ELECTIONS, and
NEW YORK CITY CAMPAIGN FINANCE BOARD,

                Defendants.
----------------------------------------X

A P P E A R A N C E S:

    Pro Se Plaintiff

    WILLIAM MURAWSKI
    530 W. 50th Street
    New York, New York 10019

    Attorneys for Defendant
    New York State Board of Elections

    New York State, Office of the Attorney General
    120 Broadway, 24th Floor
    New York, New York 10271
    By:  Owen T. Conroy, Esq.

    Attorneys for Defendants
    New York City Board of Elections and
    New York City Campaign Finance Board

    New York City Law Department
    100 Church Street
    New York, New York 10007
    By:  James M. Dervin, Esq.

**Sweet, D.J.**

Defendants New York City Board of Elections (the "City Board"), New York City Campaign Finance Board (the "Finance Board") (collectively, the "City Defendants"), and New York State Board of Elections (the "State Board") (altogether the "Defendants") have moved pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss the Complaint (the "Complaint") of *pro se* Plaintiff William Murawski ("Murawski" or the "Plaintiff"), in which he alleged violations of the First, Fifth, and Fourteenth Amendments of the U.S. Constitution, and 42 U.S.C. §§ 1985 and 1986. Plaintiff further alleges the City Board has violated the Help America Vote Act, 42 U.S.C. § 15301, *et seq.* ("HAVA"). Based on the facts and conclusions set forth below, the Defendants' motions to dismiss are granted.

## I. Prior Proceedings

Plaintiff commenced this action on September 8, 2017, alleging that all Defendants violated the First, Fifth, and Fourteenth Amendments of the U.S. Constitution and 42 U.S.C. §§ 1985 and 1986; and that the City Board violated HAVA, as set forth in the amended complaint (the "Amended Complaint"), filed on September 22, 2017, and below. *See* Am. Compl. The State Board

filed one of the instant motions to dismiss on October 6, 2017, and the City Defendants filed the other motion on October 16, 2017, both of which were marked fully submitted on December 13, 2017. *See* Order, Nov. 21, 2017, ECF No. 22.

Meanwhile, on November 6, 2017, the Plaintiff, acting *pro se*, filed a petition for a writ of mandamus seeking a temporary restraining order ("TRO") to temporarily postpone the New York General Election ("General Election") to be held on November 7, 2017. *See* Pet. for Writ of Mandamus, Nov. 6, 2017, ECF No. 21. This petition was referred to a three-judge panel, which ordered the request denied. *See* Order on Pet. for Writ of Mandamus, Nov. 6, 2017, ECF No. 21.

## II. **The Facts**

The Amended Complaint sets forth the following facts, which are assumed true for the purposes of these motions to dismiss. *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).

The Plaintiff is a natural born citizen of the United States. Am. Compl. 1. He alleges that he filed with Defendant City Board as a candidate for the Democratic Party nomination

3

for New York City Mayor in the primary election that was held on September 12, 2017 ("Primary Election"), and as an independent candidate for New York City Mayor in the General Election that was held on November 7, 2017. *Id.* The Plaintiff alleges that he attempted to collect the voter signatures required to petition for a place on each of these ballots pursuant to New York Election Law, but found that process to be "futile as people came up with all sorts of reasons not to sign a petition." Murawski Affidavit in Support of Am. Compl. ¶ 62 ("Murawski Aff."). The Plaintiff alleges that after he submitted a petition that lacked the requisite number of signatures, he received a letter from the City Board stating that he would not appear on the ballot for the September 12, 2017 Primary Election. *Id.* ¶ 82. The City Board allegedly informed the Plaintiff that his petition cover sheet failed to comply with New York State Election Law because it did not contain a statement that the petition contained a sufficient number of valid signatures. *Id.* Ex. 7.

The Plaintiff asserts various grievances regarding elections in New York City arising from this and other experiences: (1) He alleges that the "signature scheme developed by the [State Board] and the [City Board] is an arbitrary and capricious device used by political parties to eliminate"

candidates, see Am. Compl. 3; (2) he alleges that "the scheduling of Primary Elections by the [State Board] and the [City Board] violates the Equal Protection Clause" of the Fourteenth Amendment, because the proximity of these elections to the anniversary of the September 11, 2001 terrorist attacks distracts voters, see id. 4; (3) he alleges that the treatment of voters who are not enrolled in political parties violates the First Amendment, id. 3; and (4) he alleges that "representatives are hand-picked by the major parties in the city and state," id. The Plaintiff also lists various other grievances regarding his experiences with the election process in New York City dating back to the 1990s. Murawski Aff. ¶¶ 2-93.

The Plaintiff requests this Court (1) order that the Primary Election held on September 12, 2017 be "re-run" with the Plaintiff's name on the ballot; (2) place a TRO on the General Election held on November 7, 2017 until Defendants place Plaintiff's name on the ballot as a candidate for New York City Mayor under the party name "Voice of the People" and publish his name in the Finance Board voter guide ("Voter Guide"); (3) order the City and State Boards to "develop a ballot access procedure such as a bond requirement that is financially reasonable for candidates to obtain ballot access that is not arbitrary and capricious"; (4) order the City and State Boards to "allow those

5

voters who are not registered in any constituted party to vote in all Primary Elections held in New York State"; (5) "[d]eclare the 2013 election for Mayor of the City of New York as null and void because of collusion and constitutional violations"; (6) order the City and State Boards to "have Primary Elections held in September to be held on any Tuesday in a week that is either before or after the yearly September 11th Commemoration" so as not to distract voters from the importance of voting; (7) order the City and State Boards to "schedule all Primary Elections for city, state and federal elections on the same day" so as to comply with the Equal Protection Clause of the Fourteenth Amendment, and to save taxpayers $9 million annually; (8) order the City and State Boards to "develop a method within a 3 year period whereby voters can obtain a paper receipt for the ballot they cast . . . AND that the voter can verify on the internet"; and (9) order Defendants to "develop a method whereby a third, non-interested party such as the League of Woman Voters can verify the votes cast in any election held in New York State." Am. Compl. 4-5.

### III. The Applicable Standard

On a Rule 12(b)(6) motion to dismiss, all factual allegations in the complaint are accepted as true and all

6

inferences are drawn in favor of the pleader. *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1174 (2d Cir. 1993). A complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A claim is facially plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663 (quoting *Twombly*, 550 U.S. at 556). In other words, the factual allegations must "possess enough heft to show that the pleader is entitled to relief." *Twombly*, 550 U.S. at 557 (internal quotation marks omitted).

While "a plaintiff may plead facts alleged upon information and belief 'where the belief is based on factual information that makes the inference of culpability plausible,' such allegations must be 'accompanied by a statement of the facts upon which the belief is founded.'" *Munoz-Nagel v. Guess, Inc.*, No. 12 Civ. 1312 (ER), 2013 WL 1809772, at *3 (S.D.N.Y. Apr. 30, 2013) (quoting *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010)); *Prince v. Madison Square Garden*, 427 F. Supp. 2d 372, 384 (S.D.N.Y. 2006); *Williams v. Calderoni*, 11 Civ. 3020 (CM), 2012 WL 691832, at *7 (S.D.N.Y. Mar. 1, 2012)).

7

The pleadings, however, "must contain something more than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Twombly*, 550 U.S. at 555 (citation and internal quotation omitted).

In considering a motion to dismiss, "a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010).

Moreover, "because plaintiff is proceeding pro se, the Court must liberally construe his pleadings, and must 'interpret them to raise the strongest arguments that they suggest.'" *Murawski v. Pataki*, 514 F. Supp. 2d 577, 583 (S.D.N.Y. 2007) (citing *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (internal quotation and citation omitted)). "The policy of liberally construing pro se submissions is driven by the understanding that '[i]mplicit in the right to self-representation is an obligation on the part of the court to make reasonable allowances to protect pro se litigants from inadvertent forfeiture of important rights because of their lack of legal training.'" *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)).

8

## IV. **The Defendants' Motions to Dismiss Plaintiff's Complaint Are Granted**

Construing the Complaint liberally, the Plaintiff has failed to state any claim upon which relief may be granted. The Plaintiff has asserted five claims against the Defendants: as against all Defendants, violations of the First, Fifth, and Fourteenth Amendments to the U.S. Constitution, and 42 U.S.C. § 1986; as to the City Defendants only, violations of HAVA, 42 U.S.C § 1985(3). The State Board is protected from these claims by the doctrine of sovereign immunity, and as to the City Defendants, the Plaintiff has failed to assert "something more than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Twombly*, 550 U.S. at 555 (citation and internal quotation omitted).

### a. The Plaintiff's Claims Against the State Board Are Barred by Sovereign Immunity

The State Board argues that this Court lacks subject matter jurisdiction to hear Plaintiff's claims against it because it has sovereign immunity from such suits under the Eleventh Amendment. State Board Br. 4-6.

9

"Determining the existence of subject matter jurisdiction is a threshold inquiry and a claim is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008). Moreover, "[a] plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Id.*

The Eleventh Amendment of the U.S. Constitution states that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const., amend. XI. "Although the Eleventh Amendment does not explicitly bar suits against a state by its own citizens, it is well established that a non-consenting state is immune from suits brought by its own citizens in federal court." *Marino v. City University of New York*, 18 F. Supp. 3d 320, 328 (E.D.N.Y. 2014). Although sovereign immunity may be waived by the state or abrogated by Congress, "where there has been no waiver of immunity by the state or abrogation of immunity by Congress, the 11th Amendment bars suit against a state and its agencies in

federal court." *Keitt v. New York City*, 882 F. Supp. 2d 412, 424 (S.D.N.Y. 2011). "This jurisdictional bar applies regardless of the nature of the relief sought." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984).

Moreover, sovereign immunity "extends not only to the state itself, but also to entities considered 'arms of the state.'" *Clissuras v. City Univ. of New York*, 359 F.3d 79, 81 (2d Cir. 2004) (quoting *McGinty v. New York*, 251 F.3d 84, 95 (2d Cir. 2001)). "[T]he [State] Board of Elections is a state agency for the purposes of the Eleventh Amendment, and Congress has not clearly abrogated New York's immunity and New York has not unequivocally waived it." *Credico v. New York State Bd. of Elections*, 751 F. Supp. 2d 417, 420 (E.D.N.Y. 2010) (citing *McMillan v. New York State Bd. of Elections*, 10 Civ. 2505 (JG), 2010 WL 4065434, at *3 (E.D.N.Y. Oct. 15, 2010)); *see also Keitt*, 882 F. Supp. 2d at 424 (holding that "Section 1983, 1985, and 1986 claims against the State of New York and its agencies are barred by the 11th Amendment"); *see also Iwachiw v. New York City Bd. of Elections*, 217 F. Supp. 2d 374, 380 (E.D.N.Y. 2002) (holding that "the Eleventh Amendment bars the Section 1983 action against the State Board of Elections"), *aff'd, Iwachiw v. New York City Bd. of Elections*, 126 F. App'x 27 (2d Cir. 2005).

Accordingly, because New York has not waived its immunity or consented to being sued under the Constitution or 42 U.S.C. §§ 1985 or 1986, Plaintiff's claims against the State Board are dismissed with prejudice.

### b. The City Defendants' Motion to Dismiss is Granted

The City Defendants assert that the Amended Complaint should be dismissed because the Plaintiff did not properly serve the Defendants with the Summons and the Amended Complaint, and neither the Complaint nor the Amended Complaint state a claim upon which relief may be granted.[1] City Defs.' Br. 1.

---

[1] In his Amended Complaint and Affidavit, the *pro se* Plaintiff has submitted a lengthy set of facts covering a large timeframe; has listed the aforementioned constitutional and statutory bases on which he seeks relief; and has requested nine unique forms of relief from this Court. However, the Plaintiff has not done so much to relate each of these pieces to the other. Nevertheless, construing the pleadings liberally, as this Court must for *pro se* litigants, the Court "interpret[s] them to raise the strongest arguments that they suggest." *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (internal quotation and citation omitted).

Accordingly, as a reminder, the Plaintiff has requested the following relief: (1) order that the Primary Election held on September 12, 2017 be "re-run" with the Plaintiff's name on the ballot; (2) place a TRO on the General Election held on November 7, 2017 until Defendants place Plaintiff's name on the ballot as a candidate for New York City Mayor under the party name "Voice of the People" and publish his name in the Voter Guide; (3) order the City and State Boards to "develop a ballot access procedure such as a bond requirement that is financially reasonable for candidates to obtain ballot access that is not arbitrary and capricious"; (4) order the City and State Boards to "allow those voters who are not registered in any constituted party to vote in all Primary Elections held in New York State"; (5) "[d]eclare the 2013 election for Mayor of the City of New York as null and void because of collusion and constitutional violations"; (6) order the City and State Boards to "have Primary Elections held in September to be held on any Tuesday in a week that is either before or after the yearly September 11th Commemoration" so as not to distract voters from the importance of voting; (7) order the City and State Boards to "schedule all Primary Elections for city, state and federal elections on the same day" so as to

The Plaintiff has failed to plead facts sufficient to support any of the aforementioned claims to relief. First, the Plaintiff's request that the Primary Election held on September 12, 2017 be "re-run" with the Plaintiff's name on the ballot is denied. Am. Compl. 4. The Plaintiff provides no factual support for why such action is warranted. The Plaintiff cites only "Due Process Violations against Murawski" and that "[t]he signature schemes developed and implemented by the [State Board] and the [City Board] are unconstitutional." *Id.* Absent any factual and legal support for why such relief is appropriate, the City Defendants' motion to dismiss this claim is granted.

Likewise, the Plaintiff's second claim for relief is dismissed as the Plaintiff failed to seek an order to show cause requesting the postponement of the General Election held on November 7, 2017. *Id.* Nevertheless, the Second Circuit heard the Plaintiff's petition for a writ of mandamus as to this issue, and ordered the request denied. *See* Order on Pet. for Writ of Mandamus, Nov. 6, 2017, ECF No. 21. Accordingly, the Defendants' motion to dismiss this claim is granted.

---

comply with the Equal Protection Clause of the Fourteenth Amendment, and to save taxpayers $9 million annually; (8) order the City and State Boards to "develop a method within a 3 year period whereby voters can obtain a paper receipt for the ballot they cast . . . AND that the voter can verify on the internet"; and (9) order Defendants to "develop a method whereby a third, non-interested party such as the League of Woman Voters can verify the votes cast in any election held in New York State." Am. Compl. 4-5.

13

Third, the Plaintiff's request that the Court order the City and State Boards to develop a financially reasonable ballot access procedure is not grounded in any factual or legal basis. *See* Am. Compl. 5. In support of this request, the Plaintiff argues that the five percent signature requirement to be placed on the General Election ballot or the Voter Guide is "arbitrary and capricious." *Id.* However, "the general rule [is] that a ballot access requirement of signatures from five percent of the relevant voter group ordinarily does not violate constitutional rights." *Prestia v. O'Connor*, 178 F.3d 86, 87 (2d Cir. 1999). The Plaintiff has not provided any reason for why this general rule does not apply to the current situation, and, accordingly, has failed to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 663 (internal citation omitted). This request for relief is dismissed.

Next, the Plaintiff seeks to have any unaffiliated voter participate in the selection of a political party's nominee, in opposition to New York State's closed primary system. *See* Am. Compl. 5. However, the Supreme Court of the United States has upheld such a system as constitutional. *See Rosario v. Rockefeller*, 410 U.S. 752, 759 (1973) (holding that New York State's scheme of requiring voters to enroll in a political party before voting for that party furthers "a legitimate and valid state goal," and therefore is lawful and

14

"in no sense invidious or arbitrary."). The Plaintiff has failed to show how the present situation demands a different outcome, so this claim to relief is dismissed.

Further, the Plaintiff requests the Court "[d]eclare the 2013 election for Mayor of the City of New York as null and void because of collusion and [c]onstitutional violations." Am. Compl. 5. The Plaintiff has provided no legal or factual support for this claim, so it is dismissed.[2]

The Plaintiff also seeks to have the City and State Boards schedule the dates of all future Primary Elections for some Tuesday at least one week removed from September 11 of that year. Am. Compl. 5. While the Plaintiff provides that this will be less distracting for voters, he does not offer legal grounds for this request. Accordingly, this request is denied.

The Plaintiff requests that the City and State Boards schedule all Primary Elections for elected positions to city, state, and federal government on the same day, so as to comply with the Equal Protection Clause of the Fourteenth Amendment and

---

[2] Moreover, for this claim to be successful, it should have been brought within three years, per the statute of limitations for § 1983 claims. *See Murawski*, 514 F. Supp. 2d at 583 ("The applicable statute of limitations for § 1983 claims in New York is three years, which begins to run from the moment plaintiff is aware of the injury on which the claim is based.").

15

to save taxpayers approximately $9 million annually. *Id.* However, again, the Plaintiff has not provided any legal reason or factual support for why this is so. Absent additional support bridging this wide gap, this claim is dismissed.

Next, the Plaintiff seeks that the City and State Boards, within three years, develop methods that allow voters to obtain a paper receipt after voting, and to verify online that their vote was counted. *Id.* Again, the Plaintiff has not proffered a cognizant legal theory on which this relief may be granted, accordingly, it is dismissed.

Finally, the Plaintiff asks the Court to order the City Board to develop a method whereby a third, non-interested party verifies votes cast in any election held in New York State. *Id.* This request is dismissed for the same reasons as state above.

## V. Conclusion

For the foregoing reasons, the Defendants' motions to dismiss are granted, and the Plaintiff's Amended Complaint is dismissed.

It is so ordered.

**New York, NY**
**January 25, 2018**

_____
**ROBERT W. SWEET**
**U.S.D.J.**